BELYEA *v.* CITY OF PORT HURON.

1. Municipal Corporations—Defective Sidewalks—Personal Injuries—Knowledge of Defect—Contributory Negligence—Question for Jury.

> Where plaintiff was injured in the night-time by reason of a defect in a sidewalk of which he had knowledge, and for which he was on the lookout, it was not error to submit the question of contributory negligence to the jury, under an instruction that it was his duty to act carefully and prudently, and to use such reasonable care and caution as a prudent man would ordinarily exercise, in view of the recognized danger. Grant, J., dissenting.

2. Same—Negligence—Defenses.

> Where a section of a public sidewalk 50 feet in length had been removed, leaving a drop in the walk of some 15 inches on either side of such space, and a pedestrian stepped off the end of the walk and was injured, the city could not escape liability on the ground that there was no walk at the place of the accident, and it was not bound to construct any.

Error to St. Clair; Law, J. Submitted January 5, 1904. (Docket No. 3.) Decided May 17, 1904.

Case by William N. Belyea against the city of Port Huron for personal injuries caused by a defective sidewalk. From a judgment for plaintiff, defendant brings error. Affirmed.

*Joseph Walsh* and *Carl A. Wagner*, for appellant.

*William T. Mitchell* (*Stevens, Graham & Stevens*, of counsel), for appellee.

Moore, C. J. The plaintiff recovered for injuries received because of a defective sidewalk. Its condition was described by one of the witnesses as follows:

"Starting from our place and going east, there is first Mellon's house, then a vacant lot, and then Allen's house.

The vacant lot is between Mellon's and Allen's, and is between 40 and 50 feet wide.   I recollect that the walk was torn up about the 10th of August.   It was torn up by Mr. York.   Father was injured about two months and a half after the walk was torn up.   Nothing whatever was done to put up guards so as to prevent persons from getting into the opening caused by the tearing up of the walk. They tore the sidewalk up in front of the vacant lot.   It left the place where the walk had been a deep hole, a hollow in the ground under the sidewalk where the sidewalk had been torn up.   The walk had evidently been built and raised on posts, kind of blocked up, whether pieces of posts or blocking.   I did not measure the depth between the surface of the walk and the bottom of the hole or trench that was caused by the taking up of the walk, but it was probably 15 inches.   A person stepping off the easterly end into the opening would go down, say 14 to 16 inches.   The hole where the walk was torn up was rather deeper at the east end than it was towards Mellon's.   The walk was not torn up in front of Mellon's.   The walk had been built of 4x4 stringers, running lengthways, with cross-planks.   I think it was a four-foot walk there.   The plank had been torn off the top of a pair of stringers towards the east, leaving them extending out into the opening; I did not measure how far, but anywhere from two to four feet."

The plaintiff is a man 54 years old.   He was hurt between 10 and 11 o'clock at night.   He knew when the walk was torn out, and knew of its condition.   He claims he had visited at Mr. Allen's; that it was a dark night; that he knew there was a tree each side of the walk near its end; and that he was looking for the trees and the end of the walk, and that he fell off the end of the walk and was severely hurt.   It is now said he cannot recover because he was guilty of contributory negligence.

The court charged the jury, among other things, as follows:

"In case you conclude that the defendant is guilty of negligence as just set forth, the next question for you to consider is whether or not the plaintiff was himself in the exercise of due and proper care at the time he alleges he was injured.   Plaintiff must also establish this proposition

in his favor by a preponderance of evidence before he can recover. If he was not, he is guilty of contributory negligence, and cannot recover in this action. Contributory negligence is defined to be some act or omission by a person injured which an ordinarily prudent man would not have done, or would not have left undone, under the same circumstances, and which directly aided in causing or contributing to the injury received. Hence, under the law of this State in reference to this suit, if plaintiff has done any act which an ordinarily prudent man would not have done, or omitted to do any act which an ordinarily prudent man would have done, he is guilty of contributory negligence, and cannot recover. * * *

"If the jury find that on the 31st day of October, 1900, the walk in question was in a condition not reasonably safe and fit for public travel, and that it had been and remained for several weeks in that condition, and the defendant either knew or ought to have known the existing condition, and the plaintiff, at or about 11 o'clock, came out of a lighted room, and was proceeding carefully along the walk, and endeavored to locate the dangerous place, the location at that time he not having distinctly in mind by reason of the darkness of the night, and by reason of the fact, if the jury find it to be a fact, that his observation was dimmed upon coming out of the lighted room into the darkness, that he momentarily failed to locate the dangerous place, and to detect the landmarks which he was endeavoring to distinguish to use as a guide past the dangerous place, and, while using reasonable care to avoid the dangers, he momentarily lost his bearing and was precipitated into the excavation, then he may be entitled to recover.

"In relation to this question of contributory negligence, you should consider the rapidity which the testimony shows the plaintiff to have been walking, whether the night was dark or moonlight, and these things you will have to determine from the testimony. If you determine that there was sufficient light for the plaintiff to have seen the alleged defect by using his sense of sight, you have a right to say that his failure to do so is contributory negligence. You may consider whether or not the plaintiff is guilty of contributory negligence because he did not pass around the alleged defective walk, instead of approaching near to it or attempting to pass over it. The knowledge of the alleged defects which the testimony shows he possessed

placed upon him the duty to exercise such ordinary care, to act himself carefully and prudently in view of the recognized danger, and to use such reasonable care and caution as a prudent man would ordinarily exercise in view of such fact, and in view of all the circumstances that surrounded the plaintiff at the time and place of the alleged injury, taking his knowledge of the condition of the place in question into consideration."

It has been repeatedly held that a man is not precluded from traveling over a highway or sidewalk simply because he knows there is a defect in it. He is bound, however, to exercise such care and diligence as a prudent man would exercise in view of the danger. We think the following cases justify the charge of the learned judge: *Lowell* v. *Township of Watertown*, 58 Mich. 568 (25 N. W. 517); *Harris* v. *Township of Clinton*, 64 Mich. 447 (31 N. W. 425, 8 Am. St. Rep. 842); *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Brezee* v. *Powers*, 80 Mich. 172 (45 N. W. 130); *Ashman* v. *Railroad Co.*, 90 Mich. 567 (51 N. W. 645); *Corcoran* v. *City of Detroit*, 95 Mich. 84 (54 N. W. 692); *Dittrich* v. *City of Detroit*, 98 Mich. 245 (57 N. W. 125); *Germaine* v. *City of Muskegon*, 105 Mich. 213 (63 N. W. 78); *Whoram* v. *Township of Argentine*, 112 Mich. 20 (70 N. W. 341); *Schwingschlegl* v. *City of Monroe*, 113 Mich. 683 (72 N. W. 7).

It is claimed the city is not liable because no sidewalk existed at the point the accident occurred; citing *Williams* v. *City of Grand Rapids*, 59 Mich. 51 (26 N. W. 279), and *Shietart* v. *City of Detroit*, 108 Mich. 309 (66 N. W. 221). In the first of these cases no cross-walk had ever been built by the city, and it was held plaintiff could not recover for the neglect of the city to build one. In disposing of the case the court used the following language:

" The law says nothing about the construction of cross-walks, and imposes no duty to build them. It evidently means, when it imposes a duty upon municipalities to keep in good repair, that where bridges, cross-walks, culverts,

and new sidewalks have once been erected or constructed in the discretion and judgment of the common council, or other authorities having these matters in charge, because of the needs of the traveling public, they shall then thereafter be kept in good repair, and in a condition reasonably safe and fit for public travel. It does not intend to force, by a penalty in damages, the building of these, any more than it does the opening of new streets and highways. The city of Grand Rapids must determine for itself the necessity of opening a street to public travel, and the building of cross-walks over it. For a failure to do either no right of action exists, even if damage or injury is occasioned thereby. When a street is opened or a cross-walk built, then the law steps in and commands that the street or cross-walk must be kept in good repair and fit for travel without danger, or the city pay the damages arising from defects."

In *Shietart* v. *City of Detroit*, Justice MONTGOMERY was of the opinion there was a question for the jury. Justice McGRATH took no part in the decision. Justice HOOKER concurred in the result, upon the ground that the defect, if any, was obvious, and the walk was safe to all except the heedless. In the opinion written by Justice GRANT, and concurred in by Justice LONG, it was said: " The sidewalk was not out of repair. It had not been built."

Justice MORSE, who wrote the opinion in *Williams* v. *City of Grand Rapids, supra,* wrote the prevailing opinion in *Alexander* v. *City of Big Rapids,* 76 Mich. 282 (42 N. W. 1071), where it was held that the ruling in *Williams* v. *City of Grand Rapids* did not preclude a recovery where a sidewalk had been built, and afterwards a portion of it removed.

The testimony was very conflicting as to the situation where this injury occurred. The case was submitted to the jury under a very careful charge, and I think the judgment should be affirmed.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred with MOORE, C. J.

GRANT, J. ( *dissenting* ).   Beard street runs east and west in the outskirts of defendant city, about a mile and a half from its center.   On the south side of the street are no residences, buildings, or sidewalks.   Plaintiff resides on the north side of the street.   The second lot ·from plaintiff's was vacant.   On the other side of this vacant lot was the house of one Allen.   A plank sidewalk had formerly been built on that side of the street.   Opposite this vacant lot it had become out of repair, and, under the directions of the superintendent of public works, it had been removed, for a distance of about 50 feet, some 3 months before the accident, leaving the surface of the ground in substantially the same condition that it was before the walk was built.   The evidence on the part of the defendant tended to show that the sidewalk inspector banked up the ends of the remaining walk with dirt, making a slant from the edge of the walk to the ground.   The evidence on the part of the plaintiff contradicts this, and shows a fall at that point of 15 to 20 inches.   Alongside this vacant space was a smooth path used by pedestrians and bicyclists.   The ground where the sidewalk had been was soft sand, and the sides were covered with sod.   Passengers left the walk opposite the next house to plaintiff's, and took the path alongside the walk, again taking the walk in front of Allen's house.   Plaintiff passed this walk every day, and hence was perfectly familiar with the situation.   On the evening in question he made a call at the house of Mr. Allen.   It was between 30 and 40 feet from Mr. Allen's house to the end of the walk.   On his return he stepped off the end of this walk and was injured, for which injury he recovered a verdict.   He testified that he was perfectly familiar with the situation; that the walk terminated near an elm tree on one side, and a fir tree upon the other; that he was walking along at his usual gait, looking for these trees, and, while so doing, stepped off.

It is claimed that the defendant was guilty of no negligence, under the decisions of *Williams* v. *City of Grand*

*Rapids,* 59 Mich. 51 (26 N. W. 279), and *Shietart* v. *City of Detroit,* 108 Mich. 309 (66 N. W. 221). I deem it unnecessary to decide this question. The plaintiff was clearly guilty of contributory negligence. He knew exactly what the defect was, and where it was; he knew there was a path at the side; he knew the location of the trees and the end of the walk. He had the situation and the danger in mind. Yet in the darkness he walked at his usual gait, when it is perfectly apparent that, by going slowly and carefully, he could have avoided stepping off. He simply made a mistake in estimating the distance, and supposed he had not reached the end. Shall the city be held liable for his mistake? If, on coming out from his neighbor's house, it was difficult for him to see before his eyes had become accustomed to the light, the law imposed upon him the duty to go slowly and carefully, knowing there was danger ahead. It is indisputable that proper precaution would have avoided the accident. It was his duty to use it. Failing in this, he cannot recover. *Black* v. *City of Manistee,* 107 Mich. 60 (64 N. W. 868); *Irion* v. *City of Saginaw,* 120 Mich. 295 (79 N. W. 572); *Merritt* v. *Foote,* 128 Mich. 367 (87 N. W. 262); *Church* v. *Village of Howard City,* 111 Mich. 298 (69 N. W. 651, 66 Am. St. Rep. 396); *Cloney* v. *City of Kalamazoo,* 124 Mich. 655 (83 N. W. 618).

Judgment should be reversed, and new trial ordered.